UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Ortiz and Chaney
Argued at Richmond, Virginia


ANDREW CONDLIN, ET AL.

               MEMORANDUM OPINION* BY
v.  Record No. 1925-24-2      JUDGE RANDOLPH A. BEALES
                 MARCH 10, 2026
JOHN J. SHAIA

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Randall G. Johnson, Jr., Judge

Michael H. Brady (Stephen M. Faraci, Sr.; Whiteford, Taylor &
Preston L.L.P., on briefs), for appellants.

Gregory J. DuBoff (Kate C. Ashley; McGuireWoods LLP, on brief),
for appellee.


  John J. Shaia sued his sister, Anne-Marie Shaia Condlin, and her husband, Andrew

Condlin, (collectively "the Condlins") for defamation *per se* and conspiracy to commit

defamation.  Following a five-day jury trial, the jury found in favor of John Shaia on the allegation

of defamation *per se*—and awarded him $750,000 in compensatory damages and $3,000,000 in

punitive damages against Anne-Marie Condlin and $250,000 in compensatory damages against

Andrew Condlin.  After the Circuit Court of Henrico County denied the Condlins' motion to set

aside the verdict and motion for a new trial, the circuit court reduced the $3,000,000 award of

punitive damages to $350,000 pursuant to the statutory limitation for such punitive damages in

Code § 8.01-38.1 and entered a final order in favor of John Shaia granting him an award of

$250,000 against Andrew Condlin and a total award of $1,100,000 against Anne-Marie Condlin.

---

 * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## BACKGROUND[1]

On February 5, 2021, John Shaia filed a complaint against his sister, Anne-Marie Shaia Condlin, and her husband, Andrew Condlin, (collectively "the Condlins") alleging defamation *per se* and conspiracy to commit defamation. Shaia asserted that Andrew Condlin defamed him at a reception at a family wedding on October 5, 2019—and that Anne-Marie Condlin defamed him at other times in conversations with family members. In that complaint, Shaia claimed— among other things—that Andrew Condlin called him a "child molester" and that Anne-Marie Condlin called him a "rapist."

Shaia filed an amended complaint on October 27, 2021 that was largely the same as the original complaint. Then on July 28, 2022, Shaia filed the "Second Amended Complaint." The Second Amended Complaint alleged that "Anne-Marie told Philip Gibrall that she believed Plaintiff 'did something sexually inappropriate with his children.'" On January 4, 2024, Shaia filed a "Third Amended Complaint." The Third Amended Complaint contained further allegations that Anne-Marie made a defamatory statement about John Shaia to Philip Gibrall and contained a new allegation that Anne-Marie made defamatory statements about Shaia to Charles Giovannetti and to Dan Harms.

Shaia's relationship with his sister started to deteriorate in 2017 after Anne-Marie learned that one of Shaia's daughters was experiencing "severe psychological distress" after having been sexually assaulted. However, Anne-Marie did not inform John Shaia or his wife Gada about what she had learned about their daughter. When Shaia's daughter later told her father and mother about the sexual assault that had happened to her (and the resulting emotional distress), John Shaia became angry that his sister, Anne-Marie, had known about the sexual assault and

---

[1] "[A]pplying settled appellate principles, we review the evidence and all reasonable inferences flowing therefrom in a light most favorable to the plaintiff-appellee, who prevailed in the trial court." *WJLA-TV v. Levin,* 264 Va. 140, 146 (2002).

had not informed him and his wife that a sexual assault had happened to their daughter. In fact, at that point, Shaia actually requested that Anne-Marie no longer contact his children, and Anne-Marie then requested that John Shaia no longer contact her children.

Between February and April 2018, Anne-Marie and Andrew Condlin had conversations with two of Anne-Marie's other brothers. Gregory Shaia, one of the brothers, testified that during the conversation with the Condlins, he asked if they wanted him no longer to have a relationship with John Shaia. Gregory then testified, "And the comment was made [']No, quite to the contrary. We think it's that much more important that you remain close to John.[']" Gregory recalled, "And I inquired as to why that would be the case. And the answer was, [']Well, because we think he needs to be monitored, have somebody watch over him, sort of, be close to him in that context.[']" Gregory testified, "And I said, [']Well, are you saying he's sexually abusing his children?['] The answer was, [']We have reason to believe that's the case.[']" Gregory explained that he asked them why they thought that John Shaia was sexually abusing his children, and Gregory stated, "And Anne-Marie started to answer, and Andy put his hand up to stop whatever she was going to say. And he [Andrew Condlin] said, [']We have seen things that give us cause for concern.[']" Gregory further recalled then that he asked what things they had seen "And the response was, [']We're not at liberty to disclose that.[']" Counsel then asked Gregory, "So was the impression that you got from Andrew and Anne-Marie that they had some other evidence of John sexually abusing his children?" Gregory responded, "Sure. They said they have reason to believe, that would suggest there's evidence."

On October 5, 2019, at a family wedding reception, Andrew Condlin confronted John Shaia as two of Condlin's daughters stood nearby. John Shaia testified, "And I heard Andy yelling at me. He was just like off of my left shoulder, like perpendicular to me, just facing this way and yelling at me, [']I told you to stay away from my daughters.[']" Shaia stated, "And I

said, I don't know what you're talking about. I didn't -- I haven't seen your daughters, I didn't come near your daughters; I didn't approach your daughters; I didn't look at your daughters." Shaia further recalled, "He was screaming at me, and just saying, [']I told you to stay away from my daughters,['] and he said, [']I don't want a child molester near my daughters.[']" Andrew Condlin also testified and confirmed that he called Shaia a "child molester." When asked if he had described Shaia as a child molester at any other time, Andrew testified, "And I said, [']Well, he molested my wife when she was a child; therefore, he's a child molester.['] So I guess I did answer that. I did call him that."

John Shaia testified further during his case in chief. He stated that he had never molested his children nor touched his children in any inappropriate way, and he stated that, as an adult, he had never touched a child in an inappropriate way. When asked about his relationship with his sister, Anne-Marie, John Shaia testified, "It was a very close relationship. And Anne-Marie and I talked multiple times a week." Shaia recalled that his family and the Condlins would vacation together and that the Condlins had stayed with them at John Shaia's home several times. Shaia explained that he and his wife had watched the Condlins' children overnight. Shaia recalled that his children also had close relationships with the Condlin children.

When asked, "did you engage in sexually inappropriate conduct towards your sister, Anne-Marie," Shaia responded, "Yes, I did." On brief, he specified that he was 13 years old at the time (and Anne-Marie was 10 years old)—and he testified at trial that he "should not have done these things." He testified:

> There were two or three times as she got out of the shower, she was in a towel, and she sat on my lap. I was fully clothed. She was in a towel. She sat on my lap. And the towel may have been partially open for some portion of that time.

John Shaia further testified:

> In one case, I was clothed, but then I undid my belt, unzipped my pants, and pulled [my] underwear down and exposed myself to her.  In the other case, again, I don't know if it was the same time or a separate point in time.  I was fully clothed.  She was fully clothed.  I layed [sic] on top of her and rubbed against her.

Deacon Charles Giovannetti, a friend of Anne-Marie's from the parish at St. Bridget Catholic Church, testified that Anne-Marie expressed concerns to him that John Shaia was abusing his own children.  Dan Harms, who also knew Anne-Marie Condlin from his time working at St. Bridget Catholic Church, testified at trial that Anne-Marie expressed concerns to him "about the possibility" of John Shaia abusing his own children.  Likewise, Dr. Anthony Shaia, Anne-Marie and John Shaia's brother, testified that after disclosing the inappropriate actions that John Shaia had done to Anne-Marie as a child, the Condlins expressed current concerns to him about John Shaia's children.  Dr. Anthony Shaia testified, "I know that during discussions in that time frame regarding the events involving [John Shaia's daughter], she did, she did discuss with me that she [Anne-Marie] felt that children who had been abused were more likely to be sexually assaulted as adults."

In reference to John Shaia's children, Dr. Anthony Shaia also testified, "She [Anne-Marie] felt that she needed to be there for them, and that they needed someone to talk to, to reach out to if there were problems."  During his testimony, Dr. Anthony Shaia identified an email he sent to Andrew Condlin on July 12, 2019.  He recalled that the email was "in follow up" to the conversation with Anne-Marie where she indicated she needed to be there for John Shaia's children.

Mary Shaia, Dr. Anthony Shaia's wife and sister-in-law to John Shaia and Anne-Marie, testified that Anne-Marie had told her of a statistic that women who had been raped as adults were more likely to have been sexually molested as children.  Mary Shaia recalled, "She asked

me at one point if I would feel comfortable . . . if he were around my grandchildren." When asked, "what did you understand Anne-Marie Condlin to be implying about why it would be a bad idea to let John [Shaia] around your infant granddaughter," Mary responded, "I think it was unnecessary in a lot of ways. But I think she, again, was concerned for the children."

The following alleged statements of Anne-Marie Condlin regarding the plaintiff John Shaia were submitted to the jury:

1) The plaintiff is a "rapist" or "attempted rapist"
2) "I believe John has molested his children"
3) "I believe John could be molesting his children"
4) In reference to the plaintiff's children, "I need to be there for them so that they can call me if they're molested"
5) The plaintiff is a "child molester"
6) With reference to Dr. Anthony Shaia's children, that they "needed to protect themselves" from the plaintiff because they "were at risk of being sexually assaulted"
7) That Dr. Anthony Shaia "needed to be cautious" because his children "could be at risk of being sexually assaulted" by the plaintiff
8) That Anne-Marie Condlin was "concerned" that the plaintiff was sexually "abusing his children"
9) That Anne-Marie Condlin believed the plaintiff "did something inappropriate with his children"
10) That the plaintiff had a history of sexually inappropriate behavior and that because she was "concerned that something like that happened" with the plaintiff's children, Anne-Marie Condlin was "going to be there" for the plaintiff's children
11) That Anne-Marie Condlin was "concerned about John molesting his children"
12) Referring to the plaintiff and the plaintiff's daughter, that there was "a statistical correlation between women who are sexually assaulted having also been victims of sexual assault as children"
13) "Would you like John to be around your granddaughter . . . ?"
14) That Anne-Marie Condlin was "concerned" that Dr. Harry J. Shaia "had let his daughter stay at John and Gada's house"
15) That Anne-Marie Condlin was concerned that the plaintiff was "abusing his children"

After a five-day jury trial, the jury returned a verdict for John Shaia on the defamation *per se* claim but not on the conspiracy claim.

The jury found that Shaia had proven his claim of defamation on each of the statements except Statement Two.[2]  The jury awarded John Shaia $750,000 in compensatory damages and $3,000,000 in punitive damages against Anne-Marie Condlin.  The jury also found that Shaia had proven his claim against Andrew Condlin and also awarded John Shaia $250,000 in compensatory damages against him.  Pursuant to Code § 8.01-38.1, the circuit court reduced the punitive damages award to $350,000, the maximum punitive damages that could be awarded under the statute.  Therefore, the total award was $250,000 against Andrew Condlin and $1,100,000 against Anne-Marie Condlin.  The Condlins filed "MOTIONS TO SET ASIDE, FOR DIRECTED, PARTIAL JUDGMENT NOTWITHSTANDING, THE VERDICT AND FOR A NEW TRIAL."  The circuit court denied the Condlins' motions and entered a final order in favor of John Shaia.

## ANALYSIS

### I.  The Statute of Limitations and the Relation-Back Doctrine

On appeal, the Condlins argue, "The Circuit Court erred in instructing the jury that all Statements published on or after October 5, 2019, were timely, [and] erred in not dismissing, striking or otherwise granting judgment on Statements 1, 3, 4, and 6 through 15."[3]  The Condlins further argue that the circuit court "erred in refusing to set aside the Verdict on those Statements as plainly wrong and without evidence to support it, as these Statements were either published

---

[2] The jury did not find that Shaia had proven his claim on Statement Two and neither party assigns error or cross-error to that finding on Statement Two on appeal.  Thus, we do not address whether the circuit court erroneously allowed the jury to consider Statement Two.

[3] In the body of their brief to this Court, the Condlins argue that "Statement Five as said by Mrs. Condlin" was also time-barred by the statute of limitations and that the relation-back doctrine does not apply, but the Condlins did not assign error to the statute of limitations supposedly prohibiting the jury's consideration of Statement Five in their assignments of error. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court.").  Therefore, we do not reach whether Statement Five was barred by the statute of limitations or whether it related back to the initial complaint.

prior to October 5, 2019, or alleged after the statute of limitations ran and did not relate back to earlier allegations."[4]

"The decision whether to grant leave to amend a complaint rests within the sound discretion of the trial court." *Doe v. Baker*, 299 Va. 628, 656 (2021) (quoting *Kimble v. Carey*, 279 Va. 652, 662 (2010)). We assume without deciding that decisions by the circuit court on the relation-back doctrine are also reviewed for an abuse of discretion—like the review of the circuit court's decision of whether to grant leave to amend. *See id.* at 656-57. Thus, we review the circuit court's decision allowing Shaia leave to amend the original complaint under the relation-back doctrine for an abuse of discretion.

"Our review of a trial court's determination of the correct statute of limitations presents a question of law that we review de novo." *William H. Gordon Assocs. v. Heritage Fellowship*, 291 Va. 122, 136-37 (2016). "However, we will uphold the trial court's factual findings in accepting or rejecting the defense unless they are plainly wrong or without credible supporting evidence." *Id.* at 137.

The statute of limitations for defamation is one year from when the defamatory statement is made. *See* Code § 8.01-247.1. Although the statute of limitations for a defamation claim is one year, the one-year statute of limitations was extended 126 days during the time in which a number of these statements were alleged to have been made because the Supreme Court tolled the statute of limitations during the COVID-19 pandemic. *In re:* Order Declaring a Judicial

---

[4] In Assignment of Error III, the Condlins argue that Statement One was time barred by the statute of limitations, but they provide no argument to support that assertion. "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). Therefore, we do not address whether Statement One was barred by the statute of limitations or whether it related back to the initial complaint.

Emergency in Response to COVID-19 Emergency 1-2 (Va. July 8, 2020); *see also English v. Quinn*, 76 Va. App. 80, 84 (2022) ("The Seventh Order limited the tolling period to the 126 days between March 16, 2020, and July 19, 2020."). Thus, for a statement to be timely under the extended statute of limitations, Shaia must have pled his defamation claim within a year plus 126 days after the making of the statement.

John Shaia argues that his amended pleadings, filed after the expiration of the statute of limitations, were timely under the relation-back doctrine. Code § 8.01-6.1. The Supreme Court has explained, "If the amendment sets up no new cause of action or claim, and makes no new demands, but simply varies and expands the original cause of action, the amendment relates back to the commencement of the action and stops the running of the statute as of that date." *Neff v. Garrard*, 216 Va. 496, 498 (1975). Code § 8.01-6.1 states:

> an amendment of a pleading changing or adding a claim or defense against a party relates back to the date of the original pleadings for purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading, (ii) the amending party was reasonably diligent in asserting the amended claim or defense, and (iii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment.

The United States Court of Appeals for the Fourth Circuit recently applied the "conduct, transaction or occurrence" test for the relation-back doctrine in the context of a defamation case. *Cannon v. Peck*, 36 F.4th 547, 576 (4th Cir. 2022). "An amendment 'relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Id.* (alteration in original) (quoting Fed. R. Civ. P. 15(c)(1)). "A claim arises out of the same conduct, transaction, or occurrence if: (1) there is 'a factual nexus between the amendment and the original complaint,' and (2) the 'defendants had notice of the claim and will not be prejudiced by the

- 9 -

amendment.'" *Id.* (quoting *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983)). A factual nexus requires the new claim to possess the "same core facts [in time and type] as the timely filed claims." *Gray v. Branker*, 529 F.3d 220, 241 (4th Cir. 2008) (alteration in original) (quoting *Mayle v. Felix*, 545 U.S. 644, 657 (2005)).

Even if newly alleged defamatory statements contain the same content as those originally pled, an amended complaint alleging new defamatory statements will not relate back to the original complaint if the new counts "named new parties to whom allegedly defamatory words were published as well as new dates of publication." *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 1999 U.S. App. LEXIS 2725 *1, *9 (4th Cir. Feb. 23, 1999) (quoting *Rickman v. Cone Mills Corp.*, 129 F.R.D. 181, 186 (D. Kan. 1989)).

## A. Statement Four

Statement Four was made by Anne-Marie to Dr. Anthony Shaia and was alleged for the first time in the Second Amended Complaint, which Shaia filed on July 28, 2022. Dr. Anthony Shaia testified at trial that Anne-Marie made her statement that "[i]n reference to the plaintiff's children, 'I need to be there for them so that they can call me if they're molested,'" before the email Dr. Anthony Shaia sent to Andrew Condlin on July 12, 2019. Even if Statement Four related back to the original complaint filed on February 5, 2021, the statute of limitations had already run on this statement by the time the original complaint was filed. The statement was made before July 12, 2019, and the statute of limitations—a year plus the tolled period of 126 days—would have run by Monday, November 16, 2020,[5]—well before February 5, 2021, when

---

[5] The statute of limitations would have run on Sunday, November 15, 2020, so Shaia was required to file his complaint or amended complaint alleging Statement Four by Monday, November 16, 2020. *See* Code § 1-210 ("When an act of the General Assembly specifies a maximum period of time in which a legal action may be brought and the last day of that period falls on a Saturday, [or] Sunday . . . the action may be brought on the next day that is not a Saturday, Sunday, [or] legal holiday.").

- 10 -

the original complaint was filed. *In re:* Order Declaring a Judicial Emergency in Response to COVID-19 Emergency (Va. July 8, 2020). Therefore, the circuit court erred by allowing the jury to consider Statement Four because it was actually completely barred by the statute of limitations.

### B. Statements Three, Eight, and Fifteen

Statements Three, Eight, and Fifteen did not arise from the same "conduct, transaction or occurrence" as the defamatory statements alleged in the original complaint because they were "published to a different audience." Code § 8.01-6.1; *Cannon*, 36 F.4th at 576.

Statement Three and Statement Fifteen—which were made by Anne-Marie to Dan Harms— do not relate back to the original complaint filed on February 5, 2021.[6] Dan Harms testified at trial that Anne-Marie made these statements to him in "probably 2019 or 2020" and "in the time frame of the pandemic."

The July 28, 2022 Second Amended Complaint alleged, "On information and belief, Anne-Marie and Andrew have made similar statements to numerous other individuals, *including multiple other members of the Catholic church*, stating or implying that Plaintiff has sexually molested his own children and is a risk to sexually molest other children in the future." (Emphasis added). The January 4, 2024 Third Amended Complaint alleged, "Anne-Marie shared with Dan Harms her concern that John Shaia was 'abusing his children.'" The February 5, 2021 original complaint simply did not reference any comments made by Anne-Marie to any nonfamily member (who was affiliated with the Catholic Church), including Dan Harms, who was identified in the Third Amended Complaint (and was part of their local St. Bridget Catholic Church). Therefore, since Shaia added Statement Three to the July 28, 2022 Second Amended Complaint and Statement Fifteen to the January 4, 2024 Third Amended Complaint—and since those statements

---

[6] Statement Three was a new addition to the July 28, 2022 Second Amended Complaint and Statement Fifteen was a new addition to the January 4, 2024 Third Amended Complaint.

- 11 -

were made to an audience that John Shaia did not mention in the February 5, 2021 original complaint—neither Statement Three nor Statement Fifteen relates back to the original complaint. Consequently, in short, because Dan Harms is a member of the community and not a member of the family, these statements were made to a different audience and the relation-back doctrine does not apply. Thus, the statute of limitations applicable to these defamatory statements allegedly made in 2019 or 2020 had completely run by the time Shaia alleged each statement in the amended complaints. The circuit court thus erred by submitting Statements Three and Fifteen to the jury for their consideration because the statute of limitations barred the jury's consideration of them.

It is also clear that Statement Eight—made by Anne-Marie to Charles Giovannetti, which was a new addition to the Second Amended Complaint—did not relate back to the original complaint filed on February 5, 2021. The Second Amended Complaint alleged, "Anne-Marie told a local church deacon that she was 'concerned' that Plaintiff 'was sexually abusing his children.'" The original complaint simply did not reference any comments made by Anne-Marie to a local church deacon, who was later identified as Charles Giovannetti in the Third Amended Complaint, and neither Giovannetti nor any other deacon was mentioned in the original complaint. Giovannetti testified at trial that Anne-Marie made Statement Eight to him in 2019 or 2020 "before the world became aware of COVID."

In fact, the original complaint focused on Anne-Marie's conduct and Andrew's conduct, where they were making defamatory statements to *family members*, such as Anne-Marie's and Shaia's father and brothers. Applying *Cannon v. Peck*, Statement Eight was clearly "published to a different audience"—a nonfamily member who was a deacon in their church—and therefore "cannot relate back" to the original complaint. 36 F.4th at 576 ("An amendment 'relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the

- 12 -

conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" (alteration in original)). The original complaint alleged that Andrew Condlin called John Shaia a "child molester" at a family wedding reception (in the presence of two of Condlin's daughters) and that Anne-Marie Condlin called John Shaia a "rapist" when talking to Shaia's father and at least one of her brothers. Although the original complaint mentioned that the Condlins repeated these statements "possibly [to] others," none of the facts alleged in the original complaint states that these statements were made directly to parties who were *not* members of the Shaia family. Therefore, since Statement Eight was added by Shaia in the July 28, 2022 Second Amended Complaint—and since that statement was made to a completely different audience than the audience in the original complaint—Statement Eight does not relate back to any of the statements in the original complaint. Therefore, the one-year statute of limitations that applies to defamatory statements had run on Statement Eight by the time it was alleged for the first time in the Second Amended Complaint, so Statement Eight should not have gone to the jury.

Shaia argues that the circuit court correctly applied the relation-back doctrine to the statements asserted in the amended complaints, because "[t]he allegations in the amended complaints arise from the same conduct, transaction, or occurrence as the original pleading." He relies on the allegation in his first complaint that "Plaintiff reasonably believes that Andrew and Anne-Marie could be repeating these false accusations, and be doing so outside the context of the family." Even though the original complaint asserts that Shaia "reasonably believes that Andrew and Anne-Marie could be repeating these false accusations, and be doing so outside the context of the family," we find that the original complaint does not specifically state exactly *what* each of them is saying outside the family.

In summary, Statements Three, Eight, and Fifteen did not arise from the same "conduct, transaction or occurrence" as the defamatory statements alleged in the original complaint. Code

§ 8.01-6.1. The added statements were "published to a different audience"—each to a person outside of the family in the church community—and did not relate back to what was alleged in the original complaint. *Cannon*, 36 F.4th at 576. Thus, because Statements Three, Eight, and Fifteen were pled more than a year (plus the tolled period) after being made to Giovannetti and Harms, the statute of limitations barred these statements from the jury's consideration, and the circuit court erred by allowing the jury to consider them.

### C.  Statements Nine Through Fourteen

Furthermore, Statement Nine and Statement Ten also failed to relate back to the original complaint filed on February 5, 2021.[7] The July 28, 2022 Second Amended Complaint alleged, "Anne-Marie told Philip Gibrall that she believed Plaintiff 'did something sexually inappropriate with his children.'" Similarly, the January 4, 2024 Third Amended Complaint further alleged,

> Anne-Marie told Philip Gibrall that Plaintiff had a history of sexually inappropriate behavior and that because she was "concerned that something like that had happened" with Plaintiff's children, Anne-Marie was "going to be there" for Plaintiff's children, which Philip Gibrall understood to mean that Anne-Marie was concerned that Plaintiff had sexually abused his children.

Philip Gibrall testified at trial that Anne-Marie made these statements in August 2020.

Statements Eleven[8], Twelve, Thirteen, and Fourteen—initially asserted by John Shaia in the Third Amended Complaint filed on January 4, 2024—also failed to relate back to the original complaint filed on February 5, 2021. The Third Amended Complaint alleged:

---

[7] Statement Nine was initially alleged in the Second Amended Complaint filed on July 28, 2022. Statement Ten was initially alleged in the Third Amended Complaint filed on January 4, 2024.

[8] In their brief to this Court, the Condlins state that Anne-Marie made Statement Eleven to Philip Gibrall and Mary Shaia. In the Third Amended Complaint, Shaia attributed the statement to Anne-Marie during conversations with Mary Shaia, but insofar as the statement was also made to Philip Gibrall, it was still untimely under the statute of limitations and the relation-back doctrine does not apply for the reasons stated *supra*.

k. Anne-Marie told Mary Shaia she was "concerned about John molesting his children."

l. Anne-Marie told Mary Shaia that there was "a statistical correlation between women who are sexually assaulted having also been victims of sexual assault as children," which Mary Shaia understood to be implying that John Shaia had molested a particular child.

m. Anne-Marie asked Mary Shaia, "Would you like John to be around your granddaughter . . . ?" implying that John would molest her granddaughter.

n. Anne-Marie said to Mary Shaia that she was "concerned" that Anne-Marie's brother "had let his daughter stay at John and Gada's house," implying that John would molest his niece.

Mary Shaia testified at trial that she had these conversations with Anne-Marie "[d]uring COVID." Therefore, unless they relate back to the original complaint, the statute of limitations would bar recovery for defamation on any of these alleged statements.

Although Philip Gibrall is a family member—Anne-Marie's and John Shaia's uncle on their mother's side of the family—the original complaint simply did not reference any comments made by Anne-Marie to Gibrall, and Philip Gibrall was not mentioned in the original complaint at all or even in the October 27, 2021 First Amended Complaint. Furthermore, the original complaint, the First Amended Complaint, and the Second Amended Complaint did not reference any comments made by Anne-Marie to Mary Shaia. The statements made to Mary Shaia and Gibrall are clearly not part of the same "transaction or occurrence" as Anne-Marie's conversations with her father and brothers alleged in the original complaint. In fact, the statements Anne-Marie made to Mary Shaia and separately made to Philip Gibrall were said at completely different times and different locations than the statements Anne-Marie made to her father and brothers.

Because Statements Nine and Ten to Philip Gibrall and Statements Eleven, Twelve, Thirteen, and Fourteen to Mary Shaia were pled more than a year (plus the tolled period) after Anne-Marie made them, and because they did not relate back to the original complaint, the statute

of limitations barred these statements from the jury's consideration. Therefore, the circuit court erred by allowing the jury to consider Statements Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen.

    D. <u>Statements Six and Seven (and Statement Three & Statements Eight Through Fifteen)</u>

Statements Six and Seven were made by Anne-Marie to Dr. Anthony Shaia, and both statements were alleged for the first time in the Second Amended Complaint, which John Shaia filed on July 28, 2022. Statement Six in the Second Amended Complaint alleged, "Anne-Marie has told Dr. Anthony Shaia, with reference to Dr. Shaia's own children, that they 'needed to protect themselves' from Plaintiff because they 'were at risk of being sexually assaulted.'" Statement Seven in the Second Amended Complaint alleged, "Anne-Marie told Dr. Anthony Shaia that he 'needed to be cautious' because his children 'could be at risk of being sexually assaulted' by Plaintiff." During cross-examination, counsel for the Condlins asked Dr. Anthony Shaia when Anne-Marie made those statements to him. Dr. Anthony Shaia recalled, "They all occurred prior to filing the lawsuit. The majority, I think, probably occurred prior to, I think, the wedding, but I don't have a count."

The record before this Court on appeal contains some evidence that Statements Six and Seven were made after the wedding, and thus there is not enough evidence to conclude that the statute of limitations had run when the original complaint was filed on February 5, 2021. When the Condlins asserted that the statute of limitations had run, the burden rested on them to prove their affirmative defense—i.e., that the alleged statements were made more than a year and 126 days before the original complaint was filed. *Van Dam v. Gay*, 280 Va. 457, 460 (2010). The Supreme Court has been clear that "the defendant has the burden of proof on the issue that the limitation period had run when the complaint was filed." *Id.* We must "uphold the trial court's factual findings in accepting or rejecting the defense unless they are plainly wrong or without credible

supporting evidence," and we simply cannot say that the circuit court was plainly wrong here in implicitly finding that Statement Six and Statement Seven were made before the statute of limitations had run because the Condlins did not prove that Statements Six and Seven were not made after October 5, 2019. *William H. Gordon Assocs.*, 291 Va. at 137. Therefore, if these statements relate back to the original complaint, the statute of limitations had not run when the original complaint was filed on February 5, 2021, and the statements could be pled later in an amended complaint.

The Supreme Court has stated, "[I]n allowing amendments to pleadings, the amendment must not introduce a substantive cause of action different from that declared on in the original declaration." *Irvine v. Barrett*, 119 Va. 587, 591 (1916); *see also Fed. Land Bank v. Birchfield*, 173 Va. 200, 218 (1939) ("[T]he amendment being merely an amplification of the original upon points as to which the fuller details given therein were to the advantage and not to the prejudice of the defendant." (quoting *Houston v. Lynchburg Traction & Light Co.*, 119 Va. 136, 140 (1916))). In *Irvine*, the Supreme Court explained that, because the defamatory language in the original cause of action was so different from the defamatory language in the later added cause of action, the added language created a new cause of action and did not relate back to the original. *Irvine*, 119 Va. at 591. The original and added language did "not purport to have been spoken at the same time and place or to the same person." *Id.* at 590.

The same is true here. In the original complaint, John Shaia alleged, "Since the wedding, Anne-Marie has referred to Plaintiff as a 'rapist' on multiple occasions and to several people, including at least some of Plaintiff's brothers and Plaintiff's father." However, the original complaint does not allege that Anne-Marie made statements about Shaia being a "child molester." The original complaint alleged that *Andrew* Condlin called Shaia a child molester but only specifically alleged that Anne-Marie called Shaia a "rapist."

- 17 -

In the Second and Third Amended Complaints, Shaia alleged that Anne-Marie made Statement Three and Statements Six through Fifteen that accused John Shaia of being a child molester, but the original complaint did not assert that *Anne-Marie* made any statements about John Shaia being a *child molester*. The original complaint alleged that Anne-Marie made statements asserting Shaia was a *rapist* (having allegedly raped her or attempted to rape her), which like in *Irvine*, is fundamentally different than what she allegedly said in Statement Three and Statements Six through Fifteen.

In *Irvine*, the Supreme Court found that the "words ascribed to the defendant" in the amended pleading were so "dissociated" from the "words found in the original declaration" that the relation-back doctrine did not apply. *Irvine*, 119 Va. at 590. The plaintiff in *Irvine* pled the defendant's original declaration as "[t]he business is short about $1,500.00 which I have never been able to account for," and then he amended the declaration to state:

> He beat me out of $1,000.00 to $1,500.00. He tried to steal
> $1,200.00 from me. He failed to account to me for $1,000.00 which
> I put in the business.

*Id.* at 589. The Supreme Court explained that "the subsequent slanderous words are essentially different from those spoken in the first instance, and on another occasion." *Id.* at 591. As the Supreme Court instructed in *Irvine*, the statements added in the amended complaints "could not have been intended merely to amplify the language imputed to the defendant in the original declaration with the view of setting out the same cause of action in different phrase." *Id.* at 590-91. In the original complaint in this case, John Shaia alleged that Anne-Marie stated he was a rapist, and the subsequent statements added in later amended complaints about child molestation were obviously different from the alleged statements by Anne-Marie contained in the original complaint.

John Shaia argues in his brief to this Court that the original complaint alleged that Anne-Marie also made statements accusing Shaia of being a child molester, and he points to the

- 18 -

language in the original complaint which stated, "Plaintiff reasonably believes that Andrew and Anne-Marie could be repeating these false accusations, and be doing so outside the context of the family." Although Shaia alleged that Anne-Marie and Andrew could be repeating *these* statements, the original complaint does not ever attribute the "child molester" statement to Anne-Marie. The allegation that Anne-Marie and Andrew are "repeating these false accusations" clearly implies that Andrew is repeating the statement he made—that John Shaia is a child molester—and Anne-Marie is repeating the statement that she made—that John Shaia is a rapist or attempted rapist. While both are abhorrent acts and crimes of moral turpitude, rape and child molestation are different offenses with different elements and characteristics.

The February 5, 2021 original complaint simply does not allege that Anne-Marie called Shaia a child molester, so the statements—allegedly said by Anne-Marie and added to the July 28, 2022 Second Amended Complaint and the January 4, 2024 Third Amended Complaint—actually do not relate back to the original complaint. Therefore, the statute of limitations bars Statements Six and Seven from the jury—and, for the same reason, also bars Statement Three and Statements Eight through Fifteen from the jury's consideration. The circuit court erred in allowing these statements to go to the jury.

### E. Summary of the Statements

In short, the circuit court clearly erred by denying the Condlins' motion to set aside the verdict and to order a new trial because (1) Statement Four is barred outright by the statute of limitations and (2) Statements Three, Six, Seven, and Eight through Fifteen are also barred by the statute of limitations because they do not relate back to the allegations contained in the original complaint filed on February 5, 2021. Therefore, the statute of limitations barred any recovery for defamation based on Statements 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15, and the circuit court erred

- 19 -

in allowing those statements to be before the jury as it was deciding whether any of these alleged statements were defamatory.[9]

## II. Punitive Damages

"In considering [appellant's] assertion that [the appellee] did not provide clear and convincing evidence of actual malice, we independently review the record, and we review the facts in the light most favorable to the party prevailing below." *Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 42 (2006) (internal citation omitted). "To recover punitive damages in a defamation case, the plaintiff must prove actual malice by 'clear and convincing evidence that [the defendant] either knew the statements he made were false at the time he made them, or that he made them with a reckless disregard for their truth.'" *Id.* (alteration in original) (emphases omitted). "Any other words written or spoken by the defendant of the plaintiff, either before or after those sued on," are potentially relevant. *Williams Printing Co. v. Saunders*, 113 Va. 156, 169 (1912). Such statements "are admissible to show the animus of the defendant . . . whether the words tendered in evidence are themselves actionable or not, or whether they be addressed to the same party or to someone else." *Id.* "Such other words need not be connected with or refer to the defamatory matter sued on, provided they in any way tend to show malice in the defendant's mind at the time of publication." *Id.* To prove actual malice, "any competent evidence, either direct or circumstantial, can be resorted to . . . including threats, prior or subsequent defamations, subsequent statements of the defendant,

---

[9] Given that we reverse the circuit court's decision to allow the jury to consider Statements Three, Four, and Six through Fifteen, and given that the case must be remanded for a new trial on the merits, we do not need to reach the question of whether those statements were nonactionable opinion statements or statements of fact that the jury could consider. "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Bon Secours-Depaul Med. Ctr., Inc. v. Rogakos-Russell*, 304 Va. 1, 12 (2025) (alteration in original) (quoting *Rastek Constr. & Dev. Corp. v. Gen. Land Com. Real Est. Co.*, 294 Va. 416, 423 (2017)). Furthermore, the Condlins do not argue in their assignments of error before this Court that Statements One and Five are nonactionable opinion statements that the jury should not have been allowed to consider. Thus, we do not reach that particular issue.

circumstances indicating the existence of rivalry, ill will, or hostility between the parties." *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979).

In this case, Gregory Shaia testified that Anne-Marie called John Shaia a rapist and then 48 hours later admitted to Gregory that John Shaia was not actually a rapist. Gregory Shaia also testified that Anne-Marie then continued to call John Shaia a rapist, specifically to their father. Anne-Marie's repetition of a statement that she had already admitted was false is clear and convincing evidence of actual malice.

When Anne-Marie testified at trial, she indicated that she did not believe Shaia was currently a threat to children. When asked, "you believe that John is currently an active risk to sexually molest children; correct?" Anne-Marie responded, "No, that's not what I have said." Anne-Marie also testified, "None of his children have said they were sexually abused by John." The evidence at trial indicated that Anne-Marie had repeatedly expressed concern about John Shaia sexually molesting his children, but considered alongside Anne-Marie's testimony at trial that John Shaia's children never said they were abused by him, there is clear and convincing evidence present for a jury to conclude that Anne-Marie's statements were made with actual malice.

Furthermore, Dr. Anthony Shaia testified that the conversation—where Anne-Marie made several of the allegedly defamatory statements—was in response to the conflict that had arisen between the Condlins and John Shaia regarding John Shaia's adult daughter. A jury could therefore find that the evidence was sufficiently clear and convincing that the Condlins' statements were made with "ill will" or "hostility" in response to the conflict that had arisen between them and John Shaia regarding John Shaia's daughter. Andrew Condlin even stated, "This isn't over" to John Shaia at the wedding reception, which a jury could clearly find to be a threat, and a jury could find that threatening statement led to the Condlins' other defamatory statements. Therefore, for all of these reasons, we find that the evidence was sufficiently clear

and convincing that a jury could find that Anne-Marie acted with actual malice—and that the circuit court did not err by instructing the jury on punitive damages or in denying the motion to completely set aside the jury's punitive damages award against Anne-Marie Condlin. However, we do not know whether the jury's decision on punitive damages was just based on Statements One and Five or also based on other statements that were admitted into evidence but should have been barred from the jury's consideration because of the statute of limitations. Therefore, the award of punitive damages must also be reversed—and is to be reconsidered on remand.

CONCLUSION

For all of the foregoing reasons, the circuit court erred in denying the appellants' motion to set aside the verdict and to order a new trial. Because many alleged statements were considered by the jury that are barred from its consideration by the statute of limitations, we, therefore, cannot determine whether the jury only relied on Statement One and Statement Five in making its decision or also relied on other statements that should not have even been before the jury. Consequently, we must reverse the circuit court's judgment in this case and remand to the circuit court for a new trial, if the parties so desire, that is consistent with this opinion.

*Reversed and remanded.*